UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
KLIGER-WEISS INFOSYSTEMS, INC.,

                    Plaintiff,  **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM**

   v.

TRAILBLAZER CENTRAL LLC,        CV 16-06376 (JMA)(GRB)

                   Defendant.  **JURY TRIAL DEMANDED**
------------------------------------------------------X

By way of its answer and affirmative defenses to the Complaint of Kliger-Weiss Infosystems Inc. ("Plaintiff" or "KWI") dated October 10, 2016 filed in the above referenced action, Defendant Trailblazer Central LLC ("Defendant" or "Trailblazer"), by its attorneys, avers as follows:

1. Defendant lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph and leaves the Plaintiff to its proof.

2. Admit.

3. Defendant lacks knowledge or information sufficient to form a belief as to the allegations of this paragraph and leaves the Plaintiff to its proof.

4. Admit.

5. Admit that Trailblazer executed the referenced Agreement on or about June 5, 2015, deny in all other respects, and respectfully refers the Court to the Agreement for its true meaning and content.

6. Deny.

7. Deny, and respectfully refers the Court to the Agreement for its true meaning and content.

1181012

8. Admit that, on or about August 17, 2016, Trailblazer notified KWI of Trailblazer's termination of the Agreement, effective immediately, and denies in all other respects.

9. Deny.

10. Deny.

11. Deny.

12. Deny.

13. Deny.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Failure of Consideration

There has been a total failure of consideration for the Agreement in question, in that Plaintiff failed to deliver the POS Project in the manner or timeframes and for the cost as promised, as set forth in the Counterclaim below.

### Second Affirmative Defense – Failure of Performance

Plaintiff's system did not perform critical functions in accordance with Plaintiff's representations and documentation, despite being given notice and an opportunity to cure the identified deficiencies, entitling Defendant to terminate the Agreement due to Plaintiff's material breach thereof, as set forth in the Counterclaim below.

### Third Affirmative Defense – Fraud

The Agreement on which Plaintiff is suing is void because it was procured by Plaintiff's fraudulent representations, which were false and known by Plaintiff to be false at the time it made them, which were deliberately made by Plaintiff for the purpose of defrauding Defendant, and upon which Defendant relied, as set forth in the Counterclaim below.

### Fourth Affirmative Defense – Equitable Estoppel

Plaintiff is barred from recovery under the doctrine of equitable estoppel because the Agreement was procured by Plaintiff's fraudulent representations, which were false and known by Plaintiff to be false at the time it made them, which were deliberately made by Plaintiff for the purpose of defrauding Defendant, and upon which Defendant relied, as set forth in the Counterclaim below.

### Fifth Affirmative Defense – Failure to Mitigate Damages

Plaintiff is barred from recovery insomuch as it has failed to mitigate its damages.

WHEREFORE, Defendant demands judgment in its favor and against Plaintiff, dismissal of the Complaint with prejudice, an award of attorney's fees and costs, and an award of all other relief that the Court deems just and equitable.

Defendant hereby requests a trial by jury on any and all issues trialable by a jury.

### COUNTERCLAIM

By way of its Counterclaim against KWI, Trailblazer, by its attorneys, avers as follows:

1. This is an action for breach of contract, fraudulent misrepresentation, and negligent misrepresentation arising out of KWI's failure to provide services as promised to Trailblazer in connection with Trailblazer's implementation of a new point of sale ("POS") computerized system at Trailblazer's retail outlets.

### PARTIES

2. Trailblazer is a limited liability company organized under the laws of the State of Connecticut. Trailblazer has three (3) members, each of whom reside in and are citizens of the State of Connecticut.

3. Upon information and belief, KWI is a corporation organized and existing under the laws of the State of New York.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Trailblazer is a citizen of Connecticut. KWI is a citizen of New York. The amount of controversy in this action exceeds $75,000, exclusive of interest and costs.

5. Venue is appropriate in this District pursuant to 28 U.S.C. § 1441(a) because it encompasses the place where this action was initially filed by Plaintiff prior to removal of this action to this Court.

## FACTS COMMON TO ALL COUNTS

6. Trailblazer currently operates 7 retail stores located in Connecticut and Rhode Island, under the names of Trailblazer and Denali, which sell clothing, footwear and other gear to fulfill customers' outdoor needs. Trailblazer also sells its products online through its website, DenaliOutdoor.com.

7. KWI is, upon information and belief, a provider of cloud based mobile POS computer systems and support. On its website, KWI advertises its product, called Cloud 9 Mobile POS, as a "game changer" solution that offers specialty retailers leading technology in merchandising, POS, customer relationship management ("CRM") and loss prevention, and provides instant customer look up, instant item locator, instant pricing and instant availability checking—"virtually instant everything it takes to manage the store and close the sale." KWI promises on its website that implementation of its solution is "surprisingly fast and smooth", and it also touts its "exceptional customer support".

8. In November, 2014, in order to facilitate its recent and planned future growth, Trailblazer issued a Request for Proposal ("RFP") to various vendors, including KWI, to

implement a new POS system that would accommodate Trailblazer's expanding data and reporting requirements and improve Trailblazer's customer experience and satisfaction, store performance, inventory optimization and employee training (the "POS Project").

9. On or about November 26, 2014, KWI responded to the RFP, providing responses to the RFP's lengthy data requests and other requested information.

10. Among other responses, KWI's RFP response stated: that KWI at the time of its RFP response had a program within its suite of then-available products that would meet Trailblazer's specifically disclosed loyalty program requirements; and that KWI's standardized reporting package included 500+ pre-designed reports and allowed for "virtually unlimited" customized reporting.

11. Thereafter, during the period from December 2014 through approximately March 2015, Trailblazer conducted interviews of KWI and participated in demonstrations given by KWI of the reporting and other capabilities of KWI's products and services.

12. During this period, KWI again represented that it had the current capability, either in-house or through a third party partner: to produce numerous standardized reports without any customization, including certain reports specified by Trailblazer with respect to inventory turnover and gross margin return on investment ("GMROI"); to meet Trailblazer's specific loyalty program needs; and to allow customers at Trailblazer's retail outlet located at a casino to pay for products with the casino's proprietary tender.

13. KWI's sales representative, Gary Brill, and its President, Samuel Kliger, made the aforementioned representations regarding KWI's abilities to serve Trailblazer's needs to Trailblazer's independent consultant, Dick Calio, and to Trailblazer personnel present during the interviews and demonstrations, including Christopher Howe, Todd Raskin, Karen Brown, Judith Verrillo, Robert Walsh and Jason Cote.

5

14. In reliance upon KWI's representations of its capabilities and services on-line, in KWI's RFP response and during the subsequent interviews and demonstrations of the capabilities of KWI's products and services, Trailblazer entered into a contract with KWI dated April 24, 2015 (the "Agreement"), for KWI's provision of computerized management information equipment, software and support services to Trailblazer in connection with its POS Project.

15. The parties originally anticipated that the POS Project would "go live" at Trailblazer's locations before the 2015 Christmas shopping season. In approximately August 2015, when it became clear that KWI could not complete the initial implementation by the originally planned date, the "go live" date was postponed until January 2016, after the holiday season.

16. Then, just days before the long-awaited January 2016 "go live" date, Trailblazer learned that KWI's POS database did not recognize Trailblazer's color hierarchy, requiring that the "go live" date be postponed again while the color hierarchy and other issues continued to be addressed.

17. The "go live" date was next planned for April 2016. By that date however, due to continuing problems with, among other aspects, the KWI system's reporting capabilities and loyalty program implementation, Trailblazer was forced to put implementation of the POS Project on hold until KWI was able to resolve the lengthy list of items still outstanding in order to implement the Project.

18. During the lengthy implementation period, it became clear that KWI's prior representations concerning its abilities to meet Trailblazer's needs were untrue, and that KWI did not, in fact, have the technology available at that time to meet Trailblazer's needs as promised. Specifically, KWI acknowledged that its preferred loyalty program vendor, called Clutch, could

not support Trailblazer's loyalty program needs without additional costly and time consuming programming that was not previously disclosed. Additionally, KWI could not accommodate Trailblazer's need to accept proprietary casino tender in payment for purchases at its retail outlet at the casino without extensive programming changes. Furthermore, KWI's existing standardized reporting package did not meet Trailblazer's reporting needs, and would need to be customized by another third party provider, Cognos, at additional cost and delay. Moreover, the reports that ultimately could be made available (at additional cost and programming) would need to be run through a higher level section of the POS system, which would give managers access to confidential financial and other data that Trailblazer did not expect or desire.

19. In April 2016, one year after the effective date of the Agreement, Trailblazer notified KWI that its system still was not able to perform critical functions necessary to "go live" in accordance with KWI's representations and documentation, and that the implementation of the POS Project would be put on hold until KWI was able to resolve the lengthy list of outstanding issues.

20. Over the ensuing months, KWI did not resolve the outstanding issues to Trailblazer's satisfaction.

21. KWI did not implement the POS Project in the time frames and manner, or for the cost promised.

22. As a result of KWI's failure to perform under the Agreement, particularly its repeated failures to deliver the POS Project in the manner or timeframes and for the cost as promised, and its continued failure to cure the deficiencies identified in April 2016, Trailblazer determined to terminate the Agreement.

23. Trailblazer gave notice to KWI of Trailblazer's termination of the Agreement on or about August 24, 2016.

24. As a direct and proximate result of KWI's failure to perform under the Agreement, Trailblazer has suffered damages. Such damages include, but are not limited to: the amounts paid to KWI under the Agreement; the amounts paid to Trailblazer's independent computer consultant in connection with the failed POS Project; expenses incurred in connection with attempting to integrate Trailblazer's website with the POS Project; and other data migration costs incurred in connection with the POS Project. Additionally, Trailblazer personnel expended hundreds of hours in connection with the attempted implementation of the POS Project. Moreover, Trailblazer still does not have a POS system to meet the needs of its expanding retail outlets and customer base, causing Trailblazer to lose substantial revenue and customer good will.

## COUNT ONE (Breach of Contract):

25. Trailblazer reincorporates the allegations of paragraphs 1-24 above as if fully set forth herein.

26. The Agreement was a valid and binding agreement, signed by both Trailblazer and KWI.

27. Trailblazer performed its obligations under the Agreement.

28. KWI failed to perform its obligations under Agreement in breach thereof, specifically KWI failed to deliver the POS Project in the manner or timeframes and for the cost as promised.

29. As a result of KWI's breach of the Agreement, Trailblazer has suffered economic damages.

## COUNT TWO (Fraudulent Misrepresentation):

30. Trailblazer reincorporates the allegations of paragraphs 1-24 above as if fully set forth herein.

31. KWI made a false representation of material fact to KWI.

32. In its response to the RFP, KWI represented that it had a program within its suite of then-available products that would meet Trailblazer's specifically disclosed loyalty program requirements; and that KWI's standardized reporting package included 500+ pre-designed reports and allowed for "virtually unlimited" customized reporting.

33. During the subsequent interviews and demonstrations which occurred during the period from December 2014 through approximately March 2015, KWI again represented that it had the current capability, either in-house or through a third party partner: to produce numerous standardized reports without any customization, including certain reports specified by Trailblazer with respect to inventory turnover and GMROI; to meet Trailblazer's specific loyalty program needs; and to allow customers at Trailblazer's retail outlet located at a casino to pay for products with the casino's proprietary tender.

34. At the time of KWI's statements as aforesaid, KWI did not have the technology within its suite of products available to meet Trailblazer's needs of which KWI was well aware.

35. That KWI had existing products available to meet Trailblazer's disclosed needs was a material fact in that Trailblazer required a ready built product that could be integrated with its technology efficiently and without significant delay or unbudgeted expense.

36. In making these representations, KWI intended to defraud Trailblazer into entering into the Agreement and partnering with KWI to implement the POS Project and thereafter pay monthly servicing fees to KWI.

37. On information and belief, at the time of the presentation, KWI's representatives knew that KWI did not have the capabilities within its suite of then-available products to meet Trailblazer's needs of which KWI was well aware.

38. Trailblazer reasonably relied upon KWI's representations that it had the existing capability to serve Trailblazer's needs.

39. As a result of KWI's misrepresentations, Trailblazer has suffered loss, including loss of sales revenue and customer good will.

40. KWI's misrepresentation was wanton and malicious, in that it evidenced a conscious indifference and utter disregard for Trailblazer's rights. As a result, Trailblazer is entitled to punitive damages.

### COUNT THREE (Negligent Misrepresentation):

41. Trailblazer reincorporates the allegations of paragraphs 1-24 above as if fully set forth herein.

42. In its RFP response, KWI represented that it had a program within its suite of then-available products that would meet Trailblazer's specifically disclosed loyalty program requirements; and that KWI's standardized reporting package included 500+ pre-designed reports and allowed for "virtually unlimited" customized reporting.

43. During the subsequent interviews and demonstrations which occurred during the period from December 2014 through approximately March 2015, KWI again represented that it had the current capability, either in-house or through a third party partner: to produce numerous standardized reports without any customization, including certain reports specified by Trailblazer with respect to inventory turnover and GMROI; to meet Trailblazer's specific loyalty program needs; and to allow customers at Trailblazer's retail outlet located at a casino to pay for products with the casino's proprietary tender.

44. At the time of KWI's statements as aforesaid, KWI did not have the technology within its suite of products available to meet Trailblazer's needs of which KWI was well aware.

45. That KWI had existing products available to meet Trailblazer's disclosed needs was a material fact in that Trailblazer required a ready built product that could be integrated with its technology efficiently and without significant delay or unbudgeted expense.

46. KWI intended that Trailblazer would rely upon KWI's statements.

47. Trailblazer reasonably relied upon KWI's representations that it had the existing capability to serve Trailblazer's needs.

48. At the time of KWI's RFP response and the subsequent interviews and demonstrations, KWI's representatives were aware of KWI's then-existing product capabilities and of Trailblazer's product needs.

49. KWI's representatives should have known that KWI did not have the capabilities within its suite of then-available products to meet Trailblazer's needs.

50. Prior to entering into the Agreement, Trailblazer was unaware that KWI did not have the capabilities within its suite of then-available products to meet Trailblazer's needs, and KWI did not reveal this fact either in its RFP response or the subsequent interviews and demonstrations.

51. As a result of KWI's misrepresentations, Trailblazer has suffered loss, including loss of sales revenue and customer good will.

52. KWI's failure to advise Trailblazer that KWI lacked the capabilities within its suite of then-available products to meet Trailblazer's needs was grossly negligent, wanton, and reckless, in that it evidenced a conscious indifference and utter disregard for Trailblazer's rights. As a result, Trailblazer is entitled to punitive damages.

# REQUEST FOR RELIEF

WHEREFORE, Trailblazer respectfully requests that this Court:

1. Enter a judgment in favor of Trailblazer and against KWI in an amount to be determined at trial, but in excess of $75,000, to compensate Trailblazer for any losses caused by KWI's breach of contract as set forth in Count One;

2. Enter a judgment in favor of Trailblazer and against KWI in an amount to be determined at trial, but in excess of $75,000, to compensate Trailblazer for any losses caused by KWI's misrepresentation as set forth in Counts Two and Three;

3. Grant Trailblazer punitive damages as punishment for KWI's fraudulent conduct as set forth in Count Two;

4. Grant Trailblazer punitive damages as punishment for KWI's grossly negligent conduct as set forth in Count Three; and

5. Grant Trailblazer the costs of this action, including reasonable attorney's fees, and such other and further relief as this Court deems just and appropriate.

# REQUEST FOR JURY TRIAL

Trailblazer requests a jury trial.

Dated: December 29, 2016            TRAILBLAZER CENTRAL LLC

                                    BY:   *s/Rowena A. Moffett*

Rowena A. Moffett (RM-1967)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, Connecticut 06511-3714
Phone: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

And

Russell L. Penzer
Giuseppe Franzella (GF-8613)
Lazer, Aptheker, Rosella & Yedid, P.C.
225 Old Country Road
Melville, NY 11747
Phone: (631) 761-0800
Fax: (631) 761-0015
Email: penzer@larypc.com
Email: franzella@larypc.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 29, 2016, I served a copy of the foregoing by ECF to the following:

>McLAUGHLIN & STERN, LLP
>John M. Brickman, Esq.
>1010 Northern Boulevard, Suite 400
>Great Neck, New York 11021

>*/s/ Giuseppe Franzella*_____
>Giuseppe Franzella (GF-8613)